J-S08007-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
CHARLES ANTHONY ADAMS :
:
Appellant : No. 1243 MDA 2023

Appeal from the Judgment of Sentence Entered April 13, 2023
In the Court of Common Pleas of Lycoming County Criminal Division at
No(s): CP-41-CR-0001540-2021

BEFORE: OLSON, J., MURRAY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY OLSON, J.: **FILED: OCTOBER 30, 2024**

Appellant, Charles Anthony Adams, appeals from the judgment of
sentence entered on April 13, 2023, as made final by the denial of his
post-sentence motion by operation of law on August 10, 2023. We affirm.

The Commonwealth charged Appellant with committing numerous
sexual crimes against his daughter, K.A. ("the Victim"), and the case
proceeded to a jury trial on November 10, 2022. During trial, the
Commonwealth first presented the testimony of Pennsylvania State Trooper
Jamesan Keeler, who participated in a Child Advocacy Center ("CAC")

---

[*] Former Justice specially assigned to the Superior Court.

interview of the Victim.[1] When the Commonwealth referenced the Victim's CAC interview, Appellant objected and declared:

> So, Your Honor, I understand obviously the intent is to play the CAC video. There was never a Tender Years Notice filed in this case. So my understanding is that based upon that the video can't be played. It's hearsay.

N.T. Trial, 11/10/22, at 24.

The trial court acknowledged that the Commonwealth failed to provide the requisite Tender Years Notice. *See id.* at 27; *see also* 42 Pa.C.S.A. § 5985.1(b). It thus sustained Appellant's objection and excluded the video of the Victim's CAC interview. *See* N.T. Trial, 11/10/22, at 28.

---

[1] Trooper Keeler testified that, during a CAC interview:

> [child victims] speak with an interviewer who is forensically trained to interview children.
>
> And the setting is basically the child is not asked leading questions. They're not – it's basically up for the child to disclose what happens. And it's in a setting where they're not forced to talk. They're not given leading questions.
>
> . . .
>
> [During the CAC interview,] police officers are present, but they are not in the room. In all of the CAC's I have been to there's like a two-way mirror where we can observe the interview; but we're not physically in the room.

N.T. Trial, 11/10/23, at 22.

Trooper Keeler also testified that he was present during Appellant's November 22, 2021 preliminary hearing. *Id.* at 30. Regarding this topic, Trooper Keeler's testimony was as follows:

Q: Okay. Would you agree with me, Trooper Keeler, at that preliminary hearing, . . . that [the Victim] made three statements about something that happened to her?

[Trooper Keeler]: Yes.

Q: You were present [during this preliminary hearing,] you said, correct?

[Trooper Keeler]: Yes, I was.

Q: Can you tell us what those statements were?

. . .

[Appellant's Counsel]: Your Honor, may we approach, please?

[Trial Court]: You have the same [hearsay] objection, continuing?

[Appellant's Counsel]: Similar objection.

[Trial Court]: I will permit you to – he can generally say the topics but not go into her testimony.

[The Commonwealth]: Understood.

[Trial Court]: Okay. You may proceed.

[Trooper Keeler]: In summary, [the Victim] testified that she was touched by [Appellant] on her body by his hands.

Q: Okay. Do you have any understanding of the timeline of these events?

- 3 -

[Trooper Keeler]: My understanding is that it occurred between the ages of six and ten.

Q: Okay. Do you know where [the Victim] would have been living at the time?

[Trooper Keeler]: She would have been living in a residence . . . here in Lycoming County.

Q: Okay. Do you have any understanding of how often she was with [Appellant]?

[Trooper Keeler]: No. I don't know what the custody agreement was. But it was . . . my understanding that she . . . was with him often.

Q: Often. Okay. Do you know the date that [the Victim] had done the [CAC interview]?

[Trooper Keeler]: I believe it was February of 2021.

Q: Okay. And, Trooper Keeler, you said your recollection is that [the Victim] was being touched by [Appellant]?

[Trooper Keeler]: Yes. Touched and digitally penetrated by her father.

Q: What does digital penetration mean?

[Trooper Keeler]: It would be one's fingers, being referred to as digits, inside an orifice of a person's body.

Q: Okay.

[Trooper Keeler]: And my explanation of it would be her vagina.

    [Appellant's Counsel]: Your Honor, may we approach, please?

    [Trial Court]: Same objection?

    [Appellant's Counsel]: Your Honor, this is all hearsay.

- 4 -

[The Commonwealth]: I asked him to describe what digital penetration was, Your Honor. That's not hearsay.

[Appellant's Counsel]: The questions are about what the child would have said.

[Trial Court]: I'm not going to let him refer to her actual testimony. You can certainly say the topic, and you can define digital penetration.

[The Commonwealth]: Which is what he just did.

[Trial Court]: You may answer the question what's your understanding of digital penetration.

[Trooper Keeler]: My understanding is a person's hands with their fingers being referred to as digits being inserted into [an] orifice, mainly a vagina.

*Id.* at 30-33.

The Commonwealth next presented the Victim as a witness. The Victim testified that she was born in October 2008 and her first memory of Appellant molesting her was when she was three years old and sleeping in her bed. As she testified, she remembered that Appellant came into her room and began touching her vagina. *Id.* at 40-41. She testified that Appellant molested her "[a]lmost every weekend" for the next six years. *Id.* at 40-43. As she testified, "[m]ost of the time" when Appellant molested her, Appellant "would sit on the edge of my bed; and he would open my covers, lift them up, and then stick his hand in my pants." *Id.* at 41-42. She testified that this only stopped when, at nine years old, she told her grandmother about what Appellant was doing. *Id.* at 43.

Next, the Commonwealth presented the testimony of school counselor Margaret Cacchione; further, the Commonwealth offered Ms. Cacchione as an expert in the field of childhood sexual trauma. *Id.* at 70. Upon proffer, Appellant's counsel immediately objected to Ms. Cacchione's testimony on the basis that counsel had not received either an expert report or Ms. Cacchione's CV prior to trial. *Id.* The Commonwealth responded to Appellant's objection by declaring:

> She didn't author a report because she's not being offered on the basis of an evaluation she performed on [the Victim]. The purpose would be to discuss delayed reporting.

*Id.*

The trial court overruled Appellant's objection and accepted Ms. Cacchione as an expert in the field of childhood sexual trauma. *See id.*

Ms. Cacchione testified that children often delay reporting sexual and physical abuse and do so "for a host of different reasons":

> Sometimes it can be because the person who is harming them requests that they keep it a secret. Also, sometimes they feel like it's something that they did that they're gonna get in trouble for. Another main reason is that oftentimes kids don't really fully understand what is happening to them.
>
> I would say that the biggest reason that I have a lot of students not self-disclose what is happening is usually always because they don't want to get in trouble with their parents, and they don't want to cause any issues at home. That's definitely the primary reason why the majority of the students that I have worked with have not self-reported as soon as it's happened.

*Id.* at 71.

Ms. Cacchione also testified that: it is common for children to block traumatic memories; when children block traumatic memories, it is common for "things [to] seep through;" as people process trauma, some "gain memories back;" and, "it's not uncommon for a child who [] suffered sexual abuse to only remember certain details." *Id.* at 72-73. Further, Ms. Cacchione testified on direct that, in her opinion: the Victim blocked the trauma from her mind because "she was trying so hard to just start fresh and to just completely forget everything that had happened to her and not be defined by that trauma" and the Victim finally reported the abuse when she became comfortable with her living situation. *Id.*

Next, the Commonwealth presented the testimony of the Victim's mother, A.Q. ("Mother"). During Mother's direct testimony, the Commonwealth asked Mother: "what did [the Victim] tell you when she was six?" *Id.* at 79. The trial court overruled Appellant's hearsay objection to this question and allowed Mother to testify:

> Well, I think – she was in bed; and I was saying good night to them. And she said that when she – I didn't understand her at the time what she was telling me. She said that she didn't have a bellyache, but her dad was rubbing her belly. But I thought she said she had a bellyache. And so as far as I knew her dad was just rubbing her belly. But she was trying to tell me. And I couldn't read her, so I couldn't help her.

*Id.* at 79-80.

Further, and over Appellant's hearsay and relevancy objections, the trial court allowed the Commonwealth to introduce a petition for modification of

custody that Mother filed in the court of common pleas, which declared that Mother filed for modification of custody because "[the Victim] stated her father has inappropriately touched her." ***Id.*** at 81-83.

The jury found Appellant guilty of 30 counts of indecent assault under 18 Pa.C.S.A. § 3126(a)(1), 30 counts of indecent assault under 18 Pa.C.S.A. § 3126(a)(7), and one count each of corruption of a minor[2] and endangering the welfare of a child.[3]

On March 2, 2023, the trial court initially sentenced Appellant to serve an aggregate term of eight to 16 years in prison for his convictions. The Commonwealth filed a timely post-sentence motion on March 9, 2023 and Appellant filed a timely post-sentence motion on Monday, March 13, 2023. On April 13, 2023, the trial court entered an amended sentencing order in the matter, which declared that Appellant's aggregate sentence was eight to 16 years in prison, followed by a mandatory term of three years of probation, as required by 42 Pa.C.S.A. § 9718.5. ***See*** Amended Sentencing Order, 4/13/23, at 1; ***see also*** 42 Pa.C.S.A. § 9718.5(a) ("[a] person who is convicted in a court of this Commonwealth of an offense under section 9799.14(d) (relating to sexual offenses and tier system) shall be sentenced to a mandatory period of probation of three years consecutive to and in addition to any other lawful sentence issued by the court").

---

[2] 18 Pa.C.S.A. § 6301(a)(1)(ii).

[3] 18 Pa.C.S.A. § 4304(a)(1).

On June 29, 2023, the trial court entered an order pursuant to Pennsylvania Rule of Criminal Procedure 720(B)(3)(b), declaring that it was granting a 30-day extension to decide Appellant's post-sentence motion. **See** Trial Court Order, 6/29/23, at 1; **see also** Pa.R.Crim.P. 720(B)(3)(b) ("[u]pon motion of the defendant within the 120-day disposition period, for good cause shown, the judge may grant one 30-day extension for decision on the [post-sentence] motion. If the judge fails to decide the motion within the 30-day extension period, the motion shall be deemed denied by operation of law"). The trial court failed to decide Appellant's post-sentence motion within the 30-day extension period and Appellant's post-sentence motion was denied by operation of law at the end of the day on August 10, 2023.

On September 5, 2023, the trial court entered an order declaring that Appellant's post-sentence motion had been denied by operation of law on August 10, 2023.[4] **See** Trial Court Order, 9/5/23, at 1-2. Appellant then filed a timely notice of appeal on September 6, 2023. **See Commonwealth v. Perry**, 820 A.2d 734, 735 (Pa. Super. 2003) ("where the clerk of courts does not enter an order indicating that the post-sentence motion is denied by operation of law and notify the defendant of same, a breakdown in the court system has occurred and we will not find an appeal untimely under these circumstances"). Appellant raises four issues on appeal:

---

[4] We note that the clerk of courts failed to "enter an order on behalf of the court," declaring that Appellant's "post-sentence motion [was] deemed denied." **See** Pa.R.Crim.P. 720(B)(3)(c).

- 9 -

[1.] Was [the] evidence insufficient to prove [Appellant] guilty beyond a reasonable doubt of all [60] counts of indecent assault?

[2.] Did the trial court err in overruling [Appellant's] hearsay objections . . . regarding the hearsay statements of [the Victim] when no Tender Years Notice was filed by the Commonwealth pursuant to 42 Pa.C.S.A. § 5985.1?

[3.] Did the trial court err in overruling [Appellant's] objections to the qualification and subsequent testimony of Margaret [Cacchione] as an expert witness?

[4.] Did the sentencing court abuse its discretion in sentencing [Appellant] to an aggregate sentence of [eight to 16 years in prison]?

Appellant's Brief at 7 (some capitalization omitted).

Appellant first claims that the evidence was insufficient to support his indecent assault convictions. This claim is waived.

After Appellant filed his notice of appeal, the trial court ordered Appellant to file and serve a concise statement of errors complained of on appeal, pursuant to Pennsylvania Rule of Appellate Procedure 1925(b). *See* Trial Court Order, 9/19/23, at 1. Of note, Appellant raised the following, general claim in his Rule 1925(b) statement:

[Appellant] respectfully avers that the evidence submitted at Appellant's trial was insufficient to meet the Commonwealth's burden of proving [Appellant] guilty of each offense he was found guilty of, beyond a reasonable doubt.

Appellant's Rule 1925(b) Statement, 10/5/23, at 1.

We previously explained:

[i]n order to preserve a challenge to the sufficiency of the evidence on appeal, an appellant's [Rule] 1925(b) statement

- 10 -

must state with specificity the element or elements upon which the appellant alleges that the evidence was insufficient. . . . Therefore, when an appellant's 1925(b) statement fails to specify the element or elements upon which the evidence was insufficient[,] . . . the sufficiency issue is waived on appeal.

***Commonwealth v. Rivera***, 238 A.3d 482, 496 (Pa. Super. 2020), *quoting* ***Commonwealth v. Ellison***, 213 A.3d 312, 320-321 (Pa. Super. 2019). "Such specificity is of particular importance in cases where[] the appellant was convicted of multiple crimes[,] each of which contains numerous elements that the Commonwealth must prove beyond a reasonable doubt." ***Commonwealth v. Brown***, 186 A.3d 985, 990 (Pa. Super. 2018) (citation and quotation marks omitted).

In the case at bar, Appellant was convicted of numerous crimes, all of which contain "numerous elements that the Commonwealth [was required to] prove beyond a reasonable doubt." ***See id.*** However, Appellant's general Rule 1925(b) statement completely failed to "state with specificity the element or elements upon which [he was] alleg[ing] that the evidence was insufficient." ***See Rivera***, 238 A.3d at 496; ***see also*** Appellant's Rule 1925(b) Statement, 10/5/23, at 1. As such, Appellant's sufficiency of the evidence claim is waived on appeal.

Next, Appellant claims that the trial court erred when it overruled his hearsay objections to certain statements of the Victim "when no Tender Years Notice was filed by the Commonwealth pursuant to 42 Pa.C.S.A. § 5985.1." ***See*** Appellant's Brief at 7.

Appellant's claim implicates the trial court's evidentiary rulings. We have explained:

> Our standard of review for a trial court's evidentiary rulings is narrow, as the admissibility of evidence is within the discretion of the trial court and will be reversed only if the trial court has abused its discretion. An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill will or partiality, as shown by the evidence of record.

***Commonwealth v. Melvin***, 103 A.3d 1, 35 (Pa. Super. 2014) (citations omitted). "To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party." ***Commonwealth v. Lopez***, 57 A.3d 74, 81 (Pa. Super. 2012) (quotation marks and citations omitted).

In relevant part, the "tender years" exception to the hearsay rule declares:

> (a) General rule.--
>
>> (1) An out-of-court statement made by a child victim or witness, who at the time the statement was made was 16 years of age or younger, describing any of the offenses enumerated in paragraph (2), not otherwise admissible by statute or rule of evidence, is admissible in evidence in any criminal or civil proceeding if:
>>
>>> (i) the court finds, in an in camera hearing, that the evidence is relevant and that the time, content and circumstances of the statement provide sufficient indicia of reliability; and
>>>
>>> (ii) the child either:
>>>
>>>> (A) testifies at the proceeding; or

(B) is unavailable as a witness.

(2) The following offenses under 18 Pa.C.S. (relating to crimes and offenses) shall apply to paragraph (1):

. . .

Chapter 31 (relating to sexual offenses).

. . .

(b) Notice required.--A statement otherwise admissible under subsection (a) shall not be received into evidence unless the proponent of the statement notifies the adverse party of the proponent's intention to offer the statement and the particulars of the statement sufficiently in advance of the proceeding at which the proponent intends to offer the statement into evidence to provide the adverse party with a fair opportunity to prepare to meet the statement.

42 Pa.C.S.A. § 5985.1. "Statements admitted under this section are substantive evidence against the defendant." ***Commonwealth v. Copenhaver***, 316 A.3d 1020, 1023 (Pa. Super. 2024).

Within Appellant's brief to this Court, Appellant has specifically identified only two statements that, Appellant alleges, were improperly admitted: 1) when Trooper Keeler testified "[i]n summary, [the Victim] testified that she was touched by [Appellant] on her body by his hands" and 2) "when Trooper Keeler described digital penetration."[5] ***See*** Appellant's Brief at 15-16. Appellant's claims fail.

_____

[5] Within Appellant's brief, Appellant generally claims that the trial court erred when Mother "was allowed to testify to several statements made over a period of time by" the Victim. Appellant's Brief at 16. Appellant's brief does not

*(Footnote Continued Next Page)*

- 13 -

Above, this Court explained the circumstances under which Trooper
Keeler made the two contested statements. ***See supra*** at **3-5. With
respect to the first statement identified by Appellant – where Trooper Keeler
testified "[i]n summary, [the Victim] testified [during Appellant's preliminary
hearing] that she was touched by [Appellant] on her body by his hands" –
Trooper Keeler's testimony was as follows:

> Q: Okay. Would you agree with me, Trooper Keeler, at
> [Appellant's] preliminary hearing, . . . that [the Victim] made
> three statements about something that happened to her?
>
> [Trooper Keeler]: Yes.
>
> Q: You were present [during this preliminary hearing,] you
> said, correct?
>
> [Trooper Keeler]: Yes, I was.
>
> Q: Can you tell us what those statements were?
>
> . . .
>
> [Appellant's Counsel]: Your Honor, may we approach,
> please?
>
> [Trial Court]: You have the same [hearsay] objection,
> continuing?

---

identify any specific statement made by Mother and it does not explain how
Mother's statements caused him prejudice. ***See id.*** at 13-18. Therefore,
these generalized claims of error are waived. ***Commonwealth v. Spotz***, 716
A.2d 580, 585 n.5 (Pa. 1999) ("[the Pennsylvania Supreme Court] has held
that an issue will be deemed to be waived when an appellant fails to properly
explain or develop it in his brief"); ***Commonwealth v. Hallman***, 67 A.3d
1256, 1263 (Pa. Super. 2013) ("this Court may not act as counsel for an
appellant and develop arguments on his behalf") (quotation marks and
citations omitted).

[Appellant's Counsel]: Similar objection.

[Trial Court]: I will permit you to – he can generally say the topics but not go into her testimony.

[The Commonwealth]: Understood.

[Trial Court]: Okay.  You may proceed.

[Trooper Keeler]: In summary, [the Victim] testified that she was touched by [Appellant] on her body by his hands.

N.T. Trial, 11/10/22, at 30-31.

From the above, it is apparent that the trial court **sustained** Appellant's hearsay objection and ruled that Trooper Keeler was **not** permitted to "go into [the Victim's preliminary hearing] testimony," but that he could testify as to the general "topics" of the preliminary hearing.  ***See id.***  Thus, when Trooper Keeler then testified that, "[i]n summary, [the Victim] testified that she was touched by [Appellant] on her body by his hands," Trooper Keeler exceeded the bounds of the trial court's ruling, as his statement went beyond describing the "topics" of the preliminary hearing and expressly summarized the Victim's preliminary hearing testimony.  At this point, Appellant had an obligation to object to Trooper Keeler's testimony and move to strike his answer.  Appellant failed to do so and thus waived his current claim of error.  **See** Pa.R.E. 103(a) ("[a] party may claim error in a ruling to admit . . . evidence only . . . [if the party] makes a timely objection, motion to strike, or motion *in limine*"); ***Commonwealth v. Griffin***, 684 A.2d 589, 595 (Pa. Super. 1996) ("[a] failure to object to an offer of evidence at the time the offer is made, assigning the

grounds, is a waiver upon appeal of any ground of complaint against its admission") (quotation marks and citations omitted).

Appellant also claims that the trial court erred when it allowed Trooper Keeler to "describe[] digital penetration." Appellant's Brief at 16. This claim fails.

As is relevant to Appellant's claim, Trooper Keeler testified in the following manner:

> Q: Okay. And, Trooper Keeler, you said your recollection is that [the Victim] was being touched by [Appellant]?
>
> [Trooper Keeler]: Yes. Touched and digitally penetrated by her father.
>
> Q: What does digital penetration mean?
>
> [Trooper Keeler]: It would be one's fingers, being referred to as digits, inside an orifice of a person's body.
>
> Q: Okay.
>
> [Trooper Keeler]: And my explanation of it would be her vagina.
>
> > [Appellant's Counsel]: Your Honor, may we approach, please?
> >
> > [Trial Court]: Same objection?
> >
> > [Appellant's Counsel]: Your Honor, this is all hearsay.
> >
> > [The Commonwealth]: I asked him to describe what digital penetration was, Your Honor. That's not hearsay.
> >
> > [Appellant's Counsel]: The questions are about what the child would have said.

- 16 -

> [Trial Court]: I'm not going to let him refer to her actual testimony. You can certainly say the topic, and you can define digital penetration.
>
> [The Commonwealth]: Which is what he just did.
>
> [Trial Court]: You may answer the question what's your understanding of digital penetration.
>
> [Trooper Keeler]: My understanding is a person's hands with their fingers being referred to as digits being inserted into [an] orifice, mainly a vagina.

N.T. Trial, 11/10/22, at 30-33.

Here, Appellant objected to Trooper Keeler's testimony on hearsay grounds and the trial court again **sustained** Appellant's objection. However, Appellant's objection was late and Appellant did not move to strike Trooper Keeler's inadmissible statements. Thus, the jurors heard the term "digital penetration" and, following Appellant's objection, the trial court permitted Trooper Keeler to define the term.

On appeal, Appellant does not claim that the trial court erred when it allowed Trooper Keeler to summarize the Victim's testimony – indeed, the trial court expressly ruled that Trooper Keeler was **not** permitted to "refer to [the Victim's] actual testimony." *See id.* Rather, Appellant claims on appeal that the trial court erred when it allowed Trooper Keeler to **define** the term "digital penetration." *See* Appellant's Brief at 16. Appellant does not explain how Trooper Keeler's definition of this term caused him to suffer any prejudice. *See id.* As such, the claim is waived. *Commonwealth v. Clayton*, 816 A.2d

217, 221 (Pa. 2002) ("it is a well settled principle of appellate jurisprudence that undeveloped claims are waived and unreviewable on appeal").

Next, Appellant claims that the trial court erred when it overruled his objection to "the expert witness qualification and subsequent testimony of Margaret [Cacchione] for lack of notice to the defense." Appellant's Brief at 18.

On appeal, Appellant does not contest "the admissibility of [Ms. Cacchione's] testimony [under 42 Pa.C.S.A. § 5920[6]], but only whether the

_____

[6] In relevant part, Section 5920 provides:

(b) Qualifications and use of experts.--

(1) In a criminal proceeding subject to this section, a witness may be qualified by the court as an expert if the witness has specialized knowledge beyond that possessed by the average layperson based on the witness's experience with, or specialized training or education in, criminal justice, behavioral sciences or victim services issues, related to sexual violence or domestic violence, that will assist the trier of fact in understanding the dynamics of sexual violence or domestic violence, victim responses to sexual violence or domestic violence and the impact of sexual violence or domestic violence on victims during and after being assaulted.

(2) If qualified as an expert, the witness may testify to facts and opinions regarding specific types of victim responses and victim behaviors.

(3) The witness's opinion regarding the credibility of any other witness, including the victim, shall not be admissible.

(4) A witness qualified by the court as an expert under this section may be called by the attorney for the Commonwealth or the defendant to provide the expert testimony.

*(Footnote Continued Next Page)*

- 18 -

trial court erred in allowing the Commonwealth to introduce the testimony in light of its belated disclosure." **See Commonwealth v. Dunn**, 300 A.3d 324, 335 (Pa. 2023) (plurality). Further, as a majority of our Supreme Court has concluded: "Section 5920 is subject to the procedural requirements for pretrial discovery and inspection in criminal proceedings under [Pennsylvania Rule of Criminal Procedure] 573."[7] **See id.** at 335 (OISA); **id.** at 341 (OISR)

_____

42 Pa.C.S.A. § 5920.

[7] Pennsylvania Rule of Criminal Procedure 573 declares, in relevant part:

(B) Disclosure by the Commonwealth.

(1) Mandatory. In all court cases, on request by the defendant, and subject to any protective order which the Commonwealth might obtain under this rule, the Commonwealth shall disclose to the defendant's attorney all of the following requested items or information, provided they are material to the instant case. The Commonwealth shall, when applicable, permit the defendant's attorney to inspect and copy or photograph such items.

. . .

(e) any results or reports of scientific tests, expert opinions, and written or recorded reports of polygraph examinations or other physical or mental examinations of the defendant that are within the possession or control of the attorney for the Commonwealth;

. . .

(2) Discretionary With the Court.

. . .

*(Footnote Continued Next Page)*

("I wholeheartedly agree with the OISA that Rule 573 of the Pennsylvania Rules of Criminal Procedure applies to Section 5920") (quotation marks omitted).

As our Supreme Court has held, "the trial court is accorded broad discretion in deciding the appropriate remedy for a discovery violation. . . . Accordingly, a defendant seeking relief from a discovery violation must demonstrate prejudice." *Commonwealth v. Counterman*, 719 A.2d 284, 298 (Pa. 1998).

Simply stated, in the case at bar, Appellant has made no claim that he was prejudiced by the trial court's admission of Ms. Cacchione's testimony.

_____

> (b) If an expert whom the attorney for the Commonwealth intends to call in any proceeding has not prepared a report of examination or tests, the court, upon motion, may order that the expert prepare, and that the attorney for the Commonwealth disclose, a report stating the subject matter on which the expert is expected to testify; the substance of the facts to which the expert is expected to testify; and a summary of the expert's opinions and the grounds for each opinion.
>
> . . .
>
> (D) Continuing Duty to Disclose. If, prior to or during trial, either party discovers additional evidence or material previously requested or ordered to be disclosed by it, which is subject to discovery or inspection under this rule, or the identity of an additional witness or witnesses, such party shall promptly notify the opposing party or the court of the additional evidence, material, or witness.

Pa.R.Crim.P. 573.

*See* Appellant's Brief at 18-21. As such, Appellant's claim on appeal necessarily fails. *See Counterman*, 719 A.2d at 298.

Finally, Appellant claims that the trial court abused its discretion when it sentenced him to eight to 16 years in prison.

Appellant's claim challenges the discretionary aspects of his sentence. "[S]entencing is a matter vested in the sound discretion of the sentencing judge, whose judgment will not be disturbed absent an abuse of discretion." *Commonwealth v. Ritchey*, 779 A.2d 1183, 1185 (Pa. Super. 2001). Pursuant to statute, Appellant does not have an automatic right to appeal the discretionary aspects of his sentence. *See* 42 Pa.C.S.A. § 9781(b). Instead, Appellant must petition this Court for permission to appeal the discretionary aspects of his sentence. *Id.*

As this Court explained:

> [t]o reach the merits of a discretionary sentencing issue, we conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, Pa.R.A.P. 902, 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, [42 Pa.C.S.A.] § 9781(b).

*Commonwealth v. Cook*, 941 A.2d 7, 11 (Pa. Super. 2007).

Generally, to raise a substantial question, an appellant must "advance a colorable argument that the trial judge's actions were: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental

norms which underlie the sentencing process." ***Commonwealth v. McKiel***, 629 A.2d 1012, 1013 (Pa. Super. 1993); ***Commonwealth v. Goggins***, 748 A.2d 721, 726 (Pa. Super. 2000) (*en banc*). Moreover, in determining whether an appellant has raised a substantial question, we must limit our review to Appellant's Rule 2119(f) statement. ***Goggins***, 748 A.2d at 726. This limitation ensures that our inquiry remains "focus[ed] on the reasons for which the appeal is sought, in contrast to the facts underlying the appeal, which are necessary only to decide the appeal on the merits." ***Id.*** at 727 (emphasis omitted).

Within Appellant's brief to this Court, Appellant claims that the trial court abused its discretion at sentencing because: "[w]hile the sentencing court did articulate a lengthy analysis [of the reasons for Appellant's sentence,] none of the arguments made by the defense were factored into the court's analysis of its decision." Appellant's Brief at 22.

Appellant claims that the trial court abused its discretion because it failed to consider certain arguments that he made at sentencing. However, as this Court has held: "an allegation that the [trial] court did not consider certain mitigating factors does not raise a substantial question." ***Commonwealth v. McNabb***, 819 A.2d 54, 57 (Pa. Super. 2003); ***see also Commonwealth v. Johnson***, 961 A.2d 877, 880 (Pa. Super. 2008) (stating, "an allegation that a sentencing court failed to consider or did not adequately consider certain [mitigating] factors does not raise a substantial question that the sentence was inappropriate"), *appeal denied*, 968 A.2d 1280 (Pa. 2009).

Appellant's claim on appeal does not raise a substantial question. Thus, we are not permitted to review the merits of his challenge to the discretionary aspects of his sentence.

Judgment of sentence affirmed. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/30/2024